DESJARDINS DUCHARME *vs.* FRANCIS O. HUNNEWELL.

Norfolk. December 3, 1991. - January 23, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & GREANEY, JJ.

*Jurisdiction*, Foreign judgment. *Practice, Civil*, Judgment. *Conflict of Laws. Joint and Several Obligation. Words*, "Fine or other penalty," "Final and conclusive."

In an action to enforce two Canadian judgments awarding court costs to a Canadian law firm, a judge of the Superior Court correctly allowed the plaintiff's motion for summary judgment, where the award of costs, whether considered under the law of Canada or the law of Massachusetts, was remedial in nature, rather than a penalty, and where the judgment in the underlying Canadian action was final and conclusive as to the plaintiff's client. [713-716]

The principle of reciprocity embodied in G. L. c. 235, § 23A, permitted a party to raise a substantive defense to the enforcement of Canadian judgments in the Massachusetts courts. [716-717]

A Canadian court official correctly established the amount of legal fees awarded as costs in a Canadian civil proceeding. [717-718]

A judge of the Superior Court, applying Canadian law, correctly held that a party was jointly and severally liable for legal fees awarded as costs in a Canadian civil proceeding. [718]

CIVIL ACTION commenced in the Superior Court Department on September 1, 1989.

The case was heard by *J. Harold Flannery*, J., on motions for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Patrick P. Dinardo* for the defendant.

*Leonard G. Learner* for the plaintiff.

NOLAN, J. On September 1, 1989, the plaintiff, Desjardins Ducharme, a Canadian law firm, seeking to enforce two Canadian judgments in Massachusetts against the defendant,

Francis O. Hunnewell, commenced this action in the Superior Court in Norfolk County. In May, 1990, Desjardins Ducharme and Hunnewell filed cross-motions for summary judgment. A Superior Court judge granted Desjardins Ducharme's motion for summary judgment and denied Hunnewell's summary judgment motion, and then entered judgment against Hunnewell for the full amount of the Canadian judgments equaling, in United States dollars, $45,355.16, plus interest from the date of the Canadian judgments. Hunnewell filed a notice of appeal to the Appeals Court, and we transferred the case to this court on our own initiative.

Hunnewell makes three arguments on appeal: the Superior Court judge erred (1) in concluding that the costs that the Canadian courts assessed against him were enforceable foreign judgments within the meaning of G. L. c. 235, § 23A (1990 ed.), (2) in determining that a Quebec court official applied the correct assessment of costs against Hunnewell pursuant to the Quebec Superior Court's decision to quash a writ of seizure by garnishment, and (3) in holding that Hunnewell is jointly and severally liable on the judgments. We affirm the judgment of the Superior Court.

The undisputed facts of this case are as follows. In July, 1981, Hunnewell, together with three other parties (the Quebec plaintiffs),[1] commenced an action in the Superior Court of the Province of Quebec, District of Montreal, against Binladen Telecommunications Company, Ltd. (Binladen), a Saudi Arabian company, and Bell Canada, a Canadian company, for breach of a financial services contract. The Quebec plaintiffs claimed damages in excess of $6,000,000 (Canadian), and they obtained a writ of seizure by garnishment before judgment against Bell Canada.[2] Thereafter, the National Commercial Bank of Jeddah (NCB), a Saudi Arabian

---

[1]Lansdowne Financial Services Ltd., Michael Pochna, and John E. Bailey were Hunnewell's coplaintiffs.

[2]The seizure that the Quebec plaintiffs obtained is the procedural equivalent of a writ of attachment or trustee process which may be issued as prejudgment security devices in Massachusetts. See Mass. R. Civ. P. 4.1, 4.2, 365 Mass. 737, 740 (1974).

bank, intervened in the litigation, claiming that the funds seized by the Quebec plaintiffs had previously been assigned to NCB as security for its loan to Bell Canada. Desjardins Ducharme was the law firm representing NCB in the intervention.

On June 3, 1987, the Quebec Superior Court found for NCB, quashed the seizure, and awarded costs to Desjardins Ducharme. The Quebec plaintiffs thereafter appealed to the Court of Appeal of the Province of Quebec, but the Court of Appeal dismissed their appeal, with costs for their failure to furnish security to the court. The Quebec plaintiffs did not appeal this decision to the Supreme Court of Canada, and the time for filing such an appeal has passed.

On December 9, 1987, the clerk of the Court of Appeal of Quebec fixed the costs awarded Desjardins Ducharme by that court at $695 (Canadian), with interest from November 20, 1987, and on December 10, 1987, the Quebec Superior Court fixed the costs awarded to Desjardins Ducharme at $60,065 (Canadian), with interest from June 3, 1987.[3] The underlying litigation among the Quebec plaintiffs, Binladen, and Bell Canada was still pending in the Canadian courts when this action was argued before this court.

1. *Enforcement of the judgments.* By Massachusetts statute, "any foreign judgment that is final and conclusive and enforceable where rendered . . . shall be conclusive between the parties to the extent that it grants or denies recovery of a sum of money." G. L. c. 235, § 23A. A foreign judgment is "any judgment of a foreign state granting or denying recovery of a sum of money, other than a judgment for taxes, a fine or other penalty." *Id.* Hunnewell asserts that the Quebec

---

[3]The corresponding values in American dollars are $530.53 for the Court of Appeal judgment and $44,824.63 for the Superior Court judgment. Article 477 of the Code of Civil Procedure of Quebec requires the losing party to pay all costs, and art. 479 makes it clear that costs are awarded in favor of the prevailing party's attorney. The amount of costs awarded to Desjardins Ducharme by the Superior Court and the Court of Appeal was determined according to the Tariff of Judicial Fees of Advocates, a statutorily-prescribed schedule of fees to which attorneys are entitled when awarded such costs.

judgments are not covered by the Massachusetts statute and cannot be enforced by the courts of the Commonwealth because the Quebec judgments are judgments in the nature of "a fine or other penalty," and thus excluded from the statutory definition of a "foreign judgment," and also because the judgments are not "final and conclusive" since the litigation among the principal parties in Quebec is ongoing..

General Laws c. 235, § 23A, does not define what "a fine or other penalty" is, and the appellate courts of this Commonwealth have had no occasion to interpret this statute. The United States District Court for the District of Massachusetts, however, has confronted the definition of "a fine or other penalty" under § 23A, in *Chase Manhattan Bank, N.A.* v. *Hoffman*, 665 F. Supp. 73 (D. Mass. 1987),. and we agree with the District Court's interpretation. That court concluded that whether a judgment is "a fine or other penalty" depends on whether its purpose is remedial in nature, affording a private remedy to an injured person, or penal in nature, punishing an offense against the public justice. *Id.* at 75-76.

The District Court's reasoning is consistent with the common law principle that "[t]he Courts of no country execute the penal laws of another . . . ." *The Antelope*, 23 U.S. (10 Wheat.) 66, 123 (1825). See Restatement (Second) of Conflict of Laws §§ 89, 120 and comment d (1971). The decision of the United States Supreme Court in *Huntington* v. *Attrill*, 146 U.S. 657 (1892), concerning the enforceability in Maryland of a judgment rendered in New York, also supports the District Court's *Hoffman* decision.[4] The *Hoffman* decision is also consistent with this court's decision in *Sullivan* v. *Hus-*

---

[4]The Supreme Court stated that, "whether a statute of one State, which in some aspects may be called penal, is a penal law in the international sense, so that it cannot be enforced in the courts of another State, depends upon the question whether its purpose is to punish an offence against the public justice of the State, or to afford a private remedy to a person injured by the wrongful act." *Huntington* v. *Attrill*, 146 U.S. 657, 673-674 (1892). The Supreme Court's decision concerned the full faith and credit clause of art. 4 of the United States Constitution. *Id.* at 666. General Laws c. 235, § 23A, states that "[t]he foreign judgment shall be enforcea-

*tis*, 237 Mass. 441 (1921), in which this court stated that "a private action for recovery of damages for the pecuniary benefit of the family of the deceased, not inuring in any particular to the benefit of the State, is not criminal but has important remedial features. It has been held in numerous decisions that such a statute is not criminal or penal in an international sense, but that civil rights founded on it may be enforced in the courts of another jurisdiction." *Id.* at 448.

In applying this standard, the Superior Court judge correctly held that the Quebec judgments were remedial and not a penalty. The judge relied on Canadian legal authority cited in an affidavit in support of Desjardins Ducharme's motion for summary judgment to find that the sole purpose of the costs assessed by the Quebec courts against Hunnewell was "to compensate his adversary for the damage inflicted on him in compelling him to incur expenses in support of a just claim."[5] It is clear that the costs were remedial in nature rather than penal under Canadian law.

Hunnewell contends, however, that the question whether the award of costs is remedial or penal is governed not by the law of Canada but by the law of this Commonwealth.[6] Hunnewell argues that, because the Quebec Superior Court's award of costs was based on a percentage of the amount in issue and has little to do with the actual costs incurred by NCB in its intervention, the judgment, under the law of the Commonwealth, is penal rather than remedial. There is no real difference, however, between the judgment of the Que-

---

ble in the same manner as the judgment of a sister state which is entitled to full faith and credit."

[5]Under Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974), the motion judge was entitled to rely on the affidavit of Dean Yves-Marie Morissette of McGill University School of Law in Montreal.

[6]Hunnewell appropriately relies on *Huntington* v. *Attrill, supra,* for this proposition. It is important to note, however, that the Supreme Court also recognized in that decision that, although the decisions of the foreign court should not have conclusive effect in the forum State court, those decisions "are entitled to great consideration, because made by a court of high authority, construing the terms of a statute with which it was peculiarly familiar." *Id.* at 679.

bec Superior Court and our own contingency fee agreements which are recognized as valid measures of legal services rendered. See S.J.C. Rule 3:05, 382 Mass. 762 (1981). Consequently, we conclude that the Quebec judgments, under either the law of Canada or the law of the Commonwealth, are remedial and, therefore, not in the nature of "a fine or other penalty."

Hunnewell also argues that the judgment is not "final and conclusive" because the main litigation among the Quebec plaintiffs, Binladen, and Bell Canada is ongoing. The Superior Court judge, however, correctly held that the intervention action by Desjardins Ducharme's client, NCB, against the Quebec plaintiffs has reached final and conclusive judgment. Article 210 of the Code of Civil Procedure of Quebec (1980), states that "[a]ggressive intervention constitutes a separate suit, even when it is joined to the original action.": NCB was an aggressive intervener in the initial proceedings and its intervention, therefore, constituted a separate suit.[7] The Quebec plaintiffs appealed the Quebec Superior Court judgment to the Quebec Court of Appeal, which dismissed the appeal and awarded costs to Desjardins Ducharme, and the Quebec plaintiffs did not, and cannot now, appeal further to the Supreme Court of Canada. Desjardins Ducharme's client, NCB, has no further connection to the ongoing litigation in Canada and those proceedings will have no effect on the judgment in this case which is, therefore, final and conclusive.

2. *The merits of the Quebec judgments.* Hunnewell's next argument concerns the merits of the Quebec Superior Court's calculation of fees. We note that Hunnewell never articulated any objection in Canada to the Quebec court's calculation of fees although he had ample opportunity to do so. We assume, without deciding, that he is able to raise this issue here because Canadian law permits parties to raise sub-

---

[7]"Voluntary intervention is termed aggressive when the third party asks that he be acknowledged as having, against the parties or one of them, a right which is in dispute . . . ." Code of Civil Procedure of Quebec art. 209 (1980).

Desjardins Ducharme *v.* Hunnewell.

stantive defenses to the enforcement of judgments rendered outside Canada,[8] and the principle of reciprocity embodied within G. L. c. 235, § 23A, therefore requires that Hunnewell be permitted to raise substantive defenses to the enforcement of the Canadian judgments in Massachusetts courts.[9]

Hunnewell contends that the judgment of the Quebec Superior Court is in error because a Quebec court official incorrectly applied the Tariff of Judicial Fees of Advocates (Tariff) in effect at the time of the award. Hunnewell argues that it would have been proper for the Quebec court official to apply § 26(2) of the Tariff, which concerns contested incidental proceedings that put an end to disputes, rather than § 25 of the Tariff, which concerns a judgment on the merits of a case in a contested action, and § 42, which concerns a suit in which the amount of the dispute is greater than $100,000 (Canadian). While § 26(2) would have resulted in an award of only $400 (Canadian), §§ 25 and 42 resulted in an award of $60,000 (Canadian). As we have already noted, NCB's action was not a contested incidental proceeding, but rather an aggressive intervention which, according to art. 210 of the Code of Civil Procedure of Quebec, "constitutes a separate suit, even when it is joined to the original action." It is clear, therefore, that the Quebec court official's use of §§ 25 and 42 of the Tariff was appropriate.

---

[8] See art. 178 of the Code of Civil Procedure of Quebec ("Any defence which was or might have been set up to the original action may be pleaded to an action brought upon a judgment rendered out of Canada").

[9] The Uniform Foreign Money-Judgments Recognition Act (Uniform Act), after which G. L. c. 235, § 23A, is modeled, rejects the doctrine of reciprocity. See Uniform Foreign Money-Judgments Recognition Act § 4(b), 13 U.L.A. 268 (Master ed. 1986). See also *Ingersoll Milling Mach. Co.* v. *Granger*, 631 F. Supp. 314, 319 (N.D. Ill. 1986) (Uniform Act rejected reciprocity doctrine), aff'd, 833 F.2d 680 (7th Cir. 1987). Unlike the Uniform Act, however, G. L. c. 235, § 23A, provides that "[a] foreign judgment shall not be recognized if . . . (7) judgments of this state are not recognized in the courts of the foreign state." Only Massachusetts and Texas have included this concept of reciprocity within their versions of the Uniform Act. See *Hunt* v. *BP Exploration Co. (Libya) Ltd.*, 580 F. Supp. 304, 306-307 n.3 (N.D. Tex. 1984).

Moreover, the other arguments advanced by Hunnewell are also without merit. Contrary to Hunnewell's contention, *Poulin* v. *Vachon*, Quebec Superior Court No. 200-05-000552-765 (May 5, 1976), does not support his position. *Poulin* involves only an interlocutory motion to quash brought by a party to an ongoing litigation and not by an aggressive intervener such as NCB which has no other issues to litigate. Additionally, while it is true that the Quebec court official awarded an additional $50 (Canadian) to Desjardins Ducharme for the "contested incidental proceeding," the judge in the Superior Court in Norfolk County was justified in concluding, on the basis of the affidavit of Dean Morissette, see note 5, *supra*, that that fee was awarded for reception of NCB's intervention and is not necessarily inconsistent with the position that this intervention action is a separate suit and not an incidental proceeding.

3. *Joint and several liability.* Hunnewell's final contention, that he is not liable for the entire amount of the costs assessed against the Quebec plaintiffs, is also without merit. Hunnewell relies upon art. 478.1 of the Code of Civil Procedure of Quebec, which states that "[t]he costs of joint actions are shared equally by the parties, unless they have agreed to the contrary or the court, by judgment giving reasons, orders otherwise." Hunnewell, however, ignores art. 67 of the Code which states that "[u]nless the court orders otherwise, unsuccessful coplaintiffs are jointly and severally liable for the costs." There is no contradiction between these two articles of the Code. Article 478.1 allows coplaintiffs to apportion liability for their own costs among themselves, while art. 67 concerns liability among unsuccessful coplaintiffs to a defendant. We note that, while Hunnewell himself is liable for the entire amount owed to Desjardins Ducharme, he remains free to seek contribution from his coplaintiffs in Quebec.

For all the foregoing reasons, we affirm the judgment of the Superior Court.

*So ordered.*