**OLYMPUS CORPORATION and Keymed (Medical & Industrial Equipment) Ltd., Appellee**

v.

**Jerome CANADY, Appellant**

**Olympus Corporation and Keymed, Appellee**

v.

**Jerome Canady, M.D., Appellant.**

Superior Court of Pennsylvania.

Argued May 13, 2008.

Filed Oct. 30, 2008.

Vernon Chestnut, Philadelphia, for appellant.

Brett L. Messinger, Philadelphia, for appellee.

Leland P. Schermer, Pittsburgh, for ERBE, Amicus Curiae.

BEFORE: BOWES, GANTMAN, and TAMILIA, JJ.

OPINION BY GANTMAN, J.:

¶ 1 Appellant, Jerome Canady, appeals from the orders entered in the Allegheny and Philadelphia County Courts of Common Pleas, denying his petitions to open and/or strike the foreign judgment. Appellant asks us to determine whether the judgment, which included an award of legal fees to Appellees under the English Rule, is enforceable under Pennsylvania's Uniform Foreign Money Judgment Recognition Act ("UFMJRA"). We hold the judgment against Appellant that included an award of legal fees to Appellees under the English Rule is enforceable under Pennsylvania's UFMJRA. Accordingly, we affirm the orders entered in the Allegheny and Philadelphia County Courts of

Common Pleas, denying Appellant's petitions to open and/or strike the foreign judgment.

¶ 2 The relevant facts and procedural history of these consolidated appeals are as follows. In 1993, the United States Patent and Trademark Office issued Appellant a U.S. Patent (No. 5,207,675) for a surgical device known as a flexible argon plasma coagulation probe; and in 1999, Appellant obtained the corresponding European Patent (UK) (No. 0595967).

¶ 3 On March 21, 2005, Appellant brought a patent infringement action against Appellees Olympus Corporation and Keymed (Medical and Industrial Equipment) Ltd.[1] in the High Court of Justice of the United Kingdom ("High Court"). On December 21, 2005, the High Court entered judgment in favor of Appellees and against Appellant. The British Supreme Court Costs Office later awarded Appellees $871,485.20 in legal fees and other litigation related expenses, pursuant to the "English Rule," which requires an unsuccessful party to pay the prevailing party's legal fees.

¶ 4 On April 25, 2007, Appellees filed a *praecipe* to enter the foreign judgment against Appellant in the Philadelphia County Court of Common Pleas, and the court entered the judgment that day. On May 25, 2007[2] and June 6, 2007, Appellant filed motions to stay execution or enforcement of the foreign judgment until a related federal court action was concluded.[3] The Philadelphia County Court of Common Pleas denied Appellant's June 6th

---

1. Appellant also brought an action against ERBE Elektromedizin GmbH and ERBE Medical UK Limited (collectively "ERBE"), both of which are *amici curiae* in this matter.

2. The motion was dismissed on June 1, 2007 for failure to comply with Pa.R.C.P. 1023.1(b).

3. ERBE sued in the United States District Court for the Western District of Pennsylvania to enforce their judgment against Appellant. *ERBE Elektromedizin GmbH v. Canady*, 545 F.Supp.2d 491 (W.D.Pa.2008).

motion to stay on June 20, 2007. On July 13, 2007, Appellant filed a petition to open and/or strike the foreign judgment, which the Philadelphia County Court of Common Pleas denied by order and opinion on August 21, 2007. On September 19, 2007, Appellant filed a timely notice of appeal. The Philadelphia County Court of Common Pleas did not order a concise statement of matters complained on appeal, pursuant to Pa.R.A.P.1925(b).

¶ 5 Also on April 25, 2007, Appellees filed an identical *praecipe* to enter the foreign judgment against Appellant in the Allegheny County Court of Common Pleas. The Allegheny County Court of Common Pleas entered judgment that day. On May 24, 2007, Appellant filed an identical motion to stay execution or enforcement of the foreign judgment, which the Allegheny County Court of Common Pleas denied on June 11, 2007. On July 6, 2007, Appellant filed a petition to open and/or strike the foreign judgment, which the Allegheny County Court of Common Pleas denied by order and memorandum on October 17, 2007. On October 30, 2007, Appellant filed a timely notice of appeal. The Allegheny County Court of Common Pleas also did not order a concise statement of matters complained on appeal, pursuant to Pa. R.A.P.1925(b). At the parties' joint request, this Court consolidated the appeals on December 18, 2007.

¶ 6 In both appeals, Appellant raises the following issues for our review:

IS A FOREIGN JUDGMENT FOR ATTORNEY FEES REPUGNANT TO THE PUBLIC POLICY OF THIS COMMONWEALTH, AND THUS NOT ENFORCEABLE UNDER PENN-SYLVANIA'S [UFMJRA], WHERE THE JUDGMENT IS BASED SOLE-LY ON THE [ENGLISH] "LOSER PAYS" RULE THAT IS INTENDED

TO DETER ACCESS TO THE LEGAL SYSTEM?

IS A FOREIGN JUDGMENT FOR ATTORNEY FEES IN THE NATURE OF A "PENALTY," AND THUS NOT ENFORCEABLE UNDER PENN-SYLVANIA'S [UFMJRA], WHERE THE JUDGMENT IS BASED SOLE-LY ON THE [ENGLISH] "LOSER PAYS" RULE THAT PENALIZES A PARTY FOR NOT SUCCEEDING IN LITIGATION?

(Appellant's Brief at 3).

¶ 7 Pennsylvania's UFMJRA makes clear, "a foreign judgment is enforceable in the same manner as the judgment of another state which is entitled to full faith and credit." 42 P.S. § 22003. "The full faith and credit clause of the United States Constitution requires state courts to recognize and enforce the judgments of sister states." *Southern Medical Supply Company v. Myers* 804 A.2d 1252, 1256 (Pa.Super.2002) (internal citations omitted). Our standard of review from the denial of Appellant's petitions to open and/or strike the foreign judgment is limited to whether the trial court manifestly abused its discretion or committed an error of law. *Id.* Additionally, the court's application of a statute raises a question of law. *Wilson v. Transport Ins. Co.,* 889 A.2d 563, 570 (Pa.Super.2005). "As with all questions of law, the appellate standard of review is *de novo* and the appellate scope of review is plenary." *In re Adoption of J.A.S.,* 939 A.2d 403, 405 (Pa.Super.2007).

¶ 8 In his issues combined, Appellant argues the High Court's award of legal fees to Appellee, pursuant to the English Rule, is repugnant to the public policy of this Commonwealth and is therefore unenforceable under the UFMJRA. Appellant avers the English Rule essentially deters access to the legal system in violation of

Pennsylvania's policy of promoting unfettered access to the courts. Appellant claims the English Rule particularly frustrates the objectives of federal patent laws by discouraging patent enforcement actions, thereby diminishing the value of an inventor's patent.

¶ 9 Further, Appellant contends the High Court's judgment constitutes a penalty that should not be recognized under Pennsylvania's UFMJRA, because Appellee did not suffer "damages" which required compensation. Appellant concludes the courts of both Philadelphia and Allegheny Counties erred in denying his petitions to open and/or strike the foreign judgment. We disagree.

¶ 10 The following principles apply to the interpretation of a statute:

The goal in interpreting any statute is to ascertain and effectuate the intention of the General Assembly. Our Supreme Court has stated that the plain language of a statute is in general the best indication of the legislative intent that gave rise to the statute. When the language is clear, explicit, and free from any ambiguity, we discern intent from the language alone, and not from the arguments based on legislative history or "spirit" of the statute. We must construe words and phrases in the statute according to their common and approved usage. We also must construe a statute in such a way as to give effect to all its provisions, if possible, thereby avoiding the need to label any provision as mere surplusage.

*In re Adoption of J.A.S.*, *supra* at 405–406 (quoting *Cimino v. Valley Family Medicine*, 912 A.2d 851, 853 (Pa.Super.2006)). The UFMJRA defines foreign judgment as:

### § 22002. Definitions

"*Foreign government.*" Any governmental unit other than the United States, or any state, district, Commonwealth, territory or insular possession thereof, or the Panama Canal Zone, the Trust Territory of the Pacific Islands or the Ryukyu Islands.

"*Foreign judgment.*" Any judgment of a foreign government granting or denying recovery of a sum of money, other than a judgment for taxes, a fine or other penalty, or a judgment in matrimonial or family matters.

42 P.S. § 22002. The other pertinent sections of the UFMJA provide as follows:

### § 22003. Recognition and enforcement

Except as provided in [42 P.S. §§ 22004, 22005], a foreign judgment meeting the requirements of [42 P.S. § 22009] is conclusive between the parties to the extent that it grants or denies recovery of a sum of money. The foreign judgment is enforceable in the same manner as the judgment of another state which is entitled to full faith and credit.

42 P.S. § 22003.

### § 22004. Grounds for nonrecognition

A foreign judgment need not be recognized if:

\* \* \*

(3) the cause of action or claim for relief on which the judgment is based is repugnant to the public policy of this Commonwealth;

\* \* \*

42 P.S. § 22004.

### § 22009. Applicability

This act shall apply to **any foreign judgment that is final and conclusive and enforceable where rendered,** even though an appeal therefrom is pending or it is subject to appeal.

42 P.S. § 22009 (emphasis added). Essentially, the UFMJRA applies to any "for-

eign judgment" that is final, conclusive and enforceable where rendered. 42 P.S. § 22009. A judgment constituting a penalty, however, is not entitled to recognition as a "foreign judgment." 42 P.S. § 22002. The UFMJRA does not define "penalty." *Id.*

¶ 11 A foreign judgment is not entitled to recognition under the UFMJRA if **the cause of action or claim for relief** on which the judgment is based is repugnant to the public policy of this Commonwealth. 42 P.S. § 22004(3) (emphasis added). Whether a cause of action or claim for relief is repugnant to public policy implicates certain standards:

> In our judicial system the power of courts to formulate pronouncements of public policy is sharply restricted; otherwise they would become judicial legislatures rather than instrumentalities for the interpretation of law. Generally speaking, the Legislature is the body to declare the public policy of a state and to ordain changes therein.... This is peculiarly so where a matter of expediency is up for consideration.... In many cases, on questions of good morals, as opposed to mere expediency, the courts may declare and apply the public policy of the State; ... again, where an alteration in public policy on any point of general interest has actually taken place, and is indicated by long-continued change of conduct on the part of the people affected, when such a change has become practically universal, the courts may recognize this fact and declare the governing public policy accordingly.... But neither of these rules controls the ... case ... where no question of morality is involved; it is purely one of expediency; and no gradual or universal change of customary practice has occurred. Public policy in the administration of the law by the court is essentially different from what may be public policy in the view of the legislature. With the legislature it may be, and often is, nothing more than expediency. The public policy which dictates the enactment of a law is determined by the wisdom of the legislature. Public policy ... with the latter [the legislature] may be, and often is, nothing more than expediency; but with the former [the courts], it must, and may only, be a reliance upon consistency with sound policy and good morals as to the consideration or thing to be done.

> The right of a court to declare what is or is not in accord with public policy does not extend to specific economic or social problems which are controversial in nature and capable of solution only as the result of a study of various factors and conditions. **It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring. There must be a positive, well-defined, universal public sentiment, deeply integrated in the customs and beliefs of the people and in their conviction of what is just and right and in the interests of the public [well-being].** Familiar illustrations are those involving unreasonable restraints of marriage or of trade, collusive arrangements for obtaining divorces, suppression of bids for public contracts, interference with freedom of conscience or religion. If, in the domain of economic and social controversies, a court were, under the guise of the application of the doctrine of public policy, in effect to enact provisions which it might consider expedient and desirable, such action would be nothing short of judicial legislation, and each such court would be creating positive laws

according to the particular views and idiosyncrasies of its members. Only in the clearest cases, therefore, may a court make an alleged public policy the basis of judicial decision.

*Mamlin v. Genoe,* 340 Pa. 320, 324–25, 17 A.2d 407, 409 (1941) (internal citations omitted) (emphasis added). The standard for deciding a case on strict public policy grounds is unquestionably high. *Id.*

¶ 12 With respect to a patent law infringement cause of action or claim, by way of background we observe:

The constitutional provision, which is the basis of patent law, grants Congress the power to award "inventors the exclusive right to their ... discoveries." Congress has exercised this power by enacting the Patent Statute, which provides that patents shall have the attributes of personal property and grants to the patentee the right to exclude others from making, using or selling the invention for a period of seventeen years. The grant of a patent is the grant of the right to invoke the state's power in order to exclude others from utilizing the patentee's discovery without his consent. Protection of this right to exclude has been provided by Congress ... which provides that injunctions may be granted under the principles of equity to "prevent the violation of any rights secured by patent, on such terms as the court deems reasonable." Without this injunctive power of the courts, the right to exclude granted by the patent would be diminished, and the express purpose of the Constitution and Congress, to promote the progress of the useful arts, would be seriously undermined.

*Smith Intern., Inc. v. Hughes Tool Co.,* 718 F.2d 1573, 1577–78 (C.A.Fed Cir.1983), *cert. denied,* 464 U.S. 996, 104 S.Ct. 493, 78 L.Ed.2d 687 (1983) (internal citations omitted). Generally speaking, patent infringe-

ment claims are deemed legitimate and not repugnant to public policy. *Id.* Moreover, federal patent law provides that in certain patent infringement actions, the Court "may award reasonable attorney fees to the prevailing party." 35 U.S.C.A. § 285.

¶ 13 By way of further background, for centuries England has authorized the award of counsel fees to the prevailing party. *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 247 n. 18, 95 S.Ct. 1612, 1616 n. 18, 44 L.Ed.2d 141, 147–48, n. 18 (1975).

As early as 1278, the courts of England were authorized to award counsel fees to successful plaintiffs in litigation. Similarly, since 1607 English courts have been empowered to award counsel fees to defendants in all actions where such awards might be made to plaintiffs. Rules governing administration of these and related provisions have developed over the years. It is now customary in England, after litigation of substantive claims had terminated, to conduct separate hearings before special 'taxing Masters' in order to determine the appropriateness and the size of an award of counsel fees. To prevent the ancillary proceedings from becoming unduly protracted and burdensome, fees which may be included in an award are usually prescribed, even including the amounts that may be recovered for letters drafted on behalf of a client.

*Id.* (quoting *Fleischmann Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714, 717, 87 S.Ct. 1404, 1406, 18 L.Ed.2d 475, 478 (1967)). An award of counsel fees under the English Rule is subject to oversight and is not arbitrary. *Id.*

¶ 14 In Pennsylvania, the general rule is that each side is responsible for the payment of its own costs and counsel fees absent any bad faith or vexatious conduct. *Lucchino v. Commonwealth,* 570 Pa. 277,

282, 809 A.2d 264, 267 (2002). Notwithstanding this general proposition, Pennsylvania law authorizes "recovery of counsel fees and costs within the context of numerous remedial enactments." *Id.* at 282–83, 809 A.2d at 267–68 (listing examples of various statutes allowing award of counsel fees as remedial). Thus, Pennsylvania courts can award counsel fees to the prevailing party when authorized by statute or rule of court, upon agreement of the parties, or pursuant to some other recognized case law exception. *See Hart v. Arnold,* 884 A.2d 316, 342 (Pa.Super.2005), *appeal denied,* 587 Pa. 695, 897 A.2d 458 (2006). Even the Pennsylvania Supreme Court has stated "as a matter of common parlance, attorneys' fees may be considered a form of 'cost' or 'expense' to a litigant." *Merlino v. Delaware County,* 556 Pa. 422, 426, 728 A.2d 949, 951 (1999). Such an "expense" is generally deemed remedial in nature. *Id.*

¶ 15 Although Pennsylvania courts have not interpreted the meaning of "penalty" under the UFMJRA, the Massachusetts UFMJRA contains substantially the same language. *See* M.G.L.A. 235 § 23A. Interpreting the Massachusetts UFMJRA as to the meaning of "penalty," the Massachusetts Supreme Court stated: "Whether a judgment is a 'fine or other penalty' depends on whether its purpose is remedial in nature, affording a private remedy to an injured person, or penal in nature, punishing an offense against the public justice." *Desjardins Ducharme v. Hunnewell,* 411 Mass. 711, 585 N.E.2d 321, 323 (1992) (quoting *Chase Manhattan Bank, N.A. v. Hoffman,* 665 F.Supp. 73, 75–76 (D.Mass. 1987)).

¶ 16 In *Desjardins Ducharme,* a Canadian law firm sued in Massachusetts to enforce a Canadian Court judgment, which had awarded the Canadian law firm legal fees following the firm's successful defeat of a writ of seizure by garnishment. The party opposing the enforcement of the Canadian judgment argued the judgment was not covered by the Massachusetts UFMJRA, because the judgment was in the nature of a fine or penalty and excluded from the statutory definition of a valid "foreign judgment." *Id.* The Massachusetts Supreme Court held the award of legal fees under the Canadian judgment was remedial rather than penal under Canadian law, because the sole purpose of the award of costs was to compensate for the expenses incurred in support of a just cause. *Id.* at 324. Thus, the Court concluded the Canadian judgment was enforceable under either Canadian or Massachusetts law. *Id.*

¶ 17 Instantly, Appellant initiated his patent infringement action against Appellees in England, under English law, and based on a European patent. The record contains no support for the contention that the underlying cause of action is repugnant to any public policy. *See Smith Intern., Inc., supra;* 42 P.S. § 22004(3). The High Court rendered a judgment against Appellant that included an award of legal fees to Appellees under the English Rule. By initiating his complaint in England, under English law and rules of court, Appellant implicitly acquiesced to an award of counsel fees to the prevailing party. *See Alyeska Pipeline Service Co., supra.* The judgment in Appellant's case was final, conclusive and enforceable in England. *See* 42 P.S. § 22009. Therefore, the judgment arguably qualifies as a "foreign judgment" under Pennsylvania's UFMJRA. *See* 42 P.S. § 22002.

¶ 18 Pennsylvania law also allows recovery of counsel fees under certain circumstances, such as statute, agreement of the parties, or some other recognized exception. *See Hart, supra.* Therefore, recognition and enforcement of an award of

counsel fees is not so obviously against the public health, safety, morals or welfare that there is a virtual unanimity of opinion with regard to it. Nor does an award of counsel fees under these circumstances conjure up a positive, well-defined, universal public sentiment, deeply integrated in the customs and beliefs of the people and in their conviction of what is just and right and in the interests of the public well-being. *See Mamlin, supra.* Further, the judgment including an award of counsel fees in the present case is particularized to Appellant and does not create a universal sense of public indignation such that a court must decide the case on strict public policy grounds. *See id.* Additionally, Appellant's patent infringement claim was the cause of action in which the judgment in the instant case was based. *See* 42 P.S. § 22004(3). Thus, enforcement of the award of counsel fees in favor of Appellees is not repugnant to Pennsylvania public policy.

¶ 19 In response to Appellant's argument that an award of counsel fees under the English Rule is a "penalty" and therefore unenforceable as a "foreign judgment" under the UFMJRA, the Philadelphia Court of Common Pleas stated:

Here, the award compensated Olympus and Keymed for the expense of defending the lawsuit. By [Appellant's] own admission, British courts award attorney's fees to the prevailing party as a matter of right and not based on a finding that its conduct met a particular standard. If the court were to adopt [Appellant's] interpretation of the award as a penalty, it would have to hold that its British counterparts penalize the losing side for appearing in court to prose-

cute or defend a cause of action. Such a holding would directly contradict our court's confidence in the British system's intrinsic integrity.

(Trial Court Opinion, filed August 21, 2007, at 2) (internal citation omitted). The sole purpose of the High Court's award of counsel fees was to compensate Appellees for the expenses they incurred in defending Appellant's patent infringement action. *See Desjardins Ducharme, supra.* Further, the award was payable directly to Appellees and not to the court. *See id.* We hold the High Court's award was remedial and enforceable under Pennsylvania's UFMJRA.

¶ 20 In response to Appellant's argument that an award of legal fees under the English Rule frustrates the objectives of federal patent law, the Allegheny County Court of Common Pleas stated:

[T]here is no merit to [Appellant's] claim that the award of counsel fees to the winner discourages litigation to protect a patent, thereby undermining a patent holder's incentive to enforce its patent. To the contrary, the policy can be viewed as giving greater protection to a patent holder because (1) parties infringing on a patent will be less likely to contest a patent infringement claim and (2) the patent holder has greater incentive to pursue litigation because the party infringing on the patent must pay counsel fees at the conclusion of the successful litigation.

(Trial Court Opinion and Order, filed October 17, 2007, at 1). Even United States patent law allows for the recovery of counsel fees under certain circumstances. *See* 35 U.S.C.A. § 285.[4]

---

4. Our result is consistent with the federal court's decision in the Pennsylvania western district case of *ERBE Elektromedizin GmbH, supra* (holding enforcement of award of coun-

sel fees in patent infringement case under English Rule is not repugnant to Pennsylvania public policy; award of counsel fees under English Rule qualifies as a "foreign judg-

¶ 21 Based upon the foregoing, we hold the judgment against Appellant that included an award of legal fees to Appellees under the English Rule is enforceable under Pennsylvania's UFMJRA. Accordingly, we affirm the orders entered in the Allegheny and Philadelphia County Courts of Common Pleas, denying Appellant's petitions to open and/or strike the foreign judgment.

¶ 22 Orders affirmed.

ment'' under Pennsylvania's UFMJRA because it is remedial in nature; and federal patent law does not preclude enforcement under UFMJRA).