J-A16043-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| NATIONAL ASSET LOAN MANAGEMENT LIMITED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOHN MCCANN | |
| Appellant | No. 3309 EDA 2014 |

Appeal from the Order October 30, 2014
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): January Term, 2014, No. 003130

\*\*\*\*\*

| | |
|---|---|
| NATIONAL ASSET LOAN MANAGEMENT LIMITED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOHN MCCANN | |
| Appellant | No. 3312 EDA 2014 |

Appeal from the Order October 21, 2014
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): January Term, 2014, No. 003130

BEFORE:  LAZARUS, J., OLSON, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.:               **FILED SEPTEMBER 03, 2015**

---

[*] Retired Senior Judge assigned to the Superior Court.

John McCann appeals from the orders of the Court of Common Pleas of Philadelphia County, entered in favor of National Asset Loan Management Limited ("NALM") imposing a charging order[1] (the "Charging Order") and appointing a financial monitor[2] (the "Monitor Order"). Upon careful review, we affirm in part and quash in part.

NALM began these proceedings on January 28, 2014, by filing a praecipe to record a foreign-nation default judgment against McCann. The Commercial Division of the High Court of the Republic of Ireland had previously entered this judgment.[3]

The civil action in Ireland was commenced by way of summary summons issued on March 4, 2013. McCann resides outside of the Republic of Ireland, in Northern Ireland, so it was necessary to attempt to effect service via the courts in Northern Ireland. The process server in Northern Ireland was unable to serve the summary summons on McCann, so NALM sought permission from the Irish court to use substituted service. The Irish court entered an order directing service of the summary summons be made by means of substituted service upon Esther McGahon McGuiness & Co.,

---

[1] Trial Court Order, 10/21/14, at 1.

[2] Trial Court Order, 10/30/14, at 1.

[3] The Irish judgment was based on McCann's failure to make payments as guarantor of certain defaulted loans that had been extended to companies in which McCann has ownership interests.

legal solicitors representing McCann with respect to assets located in the Republic of Ireland. The summary summons was served on August 13, 2013.

McCann appeared in the Irish action and filed a motion to set aside the substituted service order, which the Irish court denied. McCann then failed to appear at a scheduled hearing before the Irish court and the court entered judgment by default in favor of NALM on November 15, 2013.

Thereafter, McCann filed a motion to set aside the default judgment that had been entered against him. That motion was denied on January 23, 2014. McCann filed a notice of appeal with respect to the Irish default judgment on February 12, 2014. That appeal is currently pending.

On September 5, 2014, NALM filed a motion in the Court of Common Pleas of Philadelphia County seeking the issuance of the Charging Order with respect to McCann's partnership and membership interests in Walnut Rittenhouse GP, LLC, Walnut Rittenhouse Associates, L.P., Castleway Properties, LLC, and Castleway Management Services, LLC (collectively, the "McCann Entities"), which the court granted. NALM also filed a petition seeking appointment of a financial monitor to obtain certain financial information regarding the McCann Entities and McCann's interests therein, which the trial court granted.

On November 17, 2014, McCann filed a timely notice of appeal to this Court, in which he raises the following claims:

I.    Should the Charging Order and Monitor Order both be reversed because NALM failed to meet its burden to have the underlying Irish default judgment against McCann recognized in accordance with applicable law?

II.   Even if one assumes that NALM used proper procedures to seek recognition of its default judgment, should the Charging Order and the Monitor Order both be reversed because NALM failed to demonstrate that the Irish court that entered the default judgment had personal jurisdiction over McCann?

III.  Even if one assumes that the Irish default judgment against McCann has been properly recognized, should the Charging Order and the Monitor Order be reversed because NALM utilized incorrect execution procedures?

Brief of Appellant, at 5-6.

McCann first claims that both orders should be reversed because NALM failed to meet the burden of having the underlying Irish default judgment against McCann recognized in accordance with applicable law. McCann argues that NALM was required to initiate a civil action by complaint to comply with principles of comity. Instead, NALM filed a praecipe to enter its foreign-nation default judgment, under the Uniform Foreign Money Judgment Recognition Act (the "Recognition Act"), 42 P.S. §§ 22001-22009, in order to have it recognized and enforced through the Enforcement of Foreign Judgments Act (the "Enforcement Act"), 42 Pa.C.S. § 4306. McCann claims that the Recognition Act did not disturb the common law principles of comity and that a complaint must still be filed in order for the foreign nation judgment to be recognized. McCann argues that since NALM failed to do so, the judgment is void and therefore the Charging Order and Monitor Order have no legal basis and should be reversed.

McCann's argument requires this Court to engage in statutory interpretation of the Recognition Act. "Statutory interpretation is a question of law, and therefore our scope of review is plenary, and our standard of review is *de novo*." ***Commonwealth v. Giulian***, 111 A.3d 201, 203 (Pa. Super. 2015).

When interpreting a statute:

> [W]e look to ascertain and effectuate the intention of the General Assembly. Additionally, we must give effect to all of the law[']s provision[s] and are not to render language superfluous or assume language to be mere surplusage. If the text of the statute is clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

***In re T.P.***, 78 A.3d 1166, 1174 (Pa. Super. 2013) (citations and quotation marks omitted).

We now turn to the applicable statute, section 22003 of the Recognition Act, which provides:

> Except as provided in sections 4 and 5, a foreign judgment meeting the requirements of section 9 is conclusive between the parties to the extent that it grants or denies recovery of a sum of money. The foreign judgment is enforceable in the same manner as the judgment of another state which is entitled to full faith and credit.

42 P.S. § 22003.

In Pennsylvania, the enforceability of the judgment of another state is controlled by the Enforcement Act, which provides, in relevant part, as follows:

- 5 -

**§ 4306. Enforcement of foreign judgments.**

* * *

(b)  Filing and status of foreign judgments. — A copy of any foreign judgment including the docket entries incidental thereto authenticated in accordance with an act of Congress or this title may be filed in the office of the clerk of any court of common pleas of this Commonwealth.  The clerk shall treat the foreign judgment in the same manner as a judgment of any court of common pleas of this Commonwealth.

42 Pa.C.S. § 4306.

Historically, foreign judgments were not judgments, but rights of action, and one must have commenced a civil action in order to have it recognized and enforced.  *Morrissey v. Morrissey*, 713 A.2d 614, 616 (Pa. 1998).  However, in *Morrissey*, which both parties cite for support, the Pennsylvania Supreme Court held that "in enacting the various statutes providing for registration of foreign judgments, the legislature implemented streamlined procedures for domesticating foreign judgments, establishing registration *as an alternative to the commencement of a civil action*."  *Id.* at 617 (emphasis added).  The Court held that through the applicable statute, RURESA,[4] a Texas child support order became immediately enforceable in Pennsylvania upon its registration.  *Id.*

In *Louis Dreyfus Commodities Suisse SA v. Fin. Software Sys.*, 99 A.3d 79 (Pa. Super. 2014), this Court held that "because foreign nation judgments are not entitled to full faith and credit, but rather are subject to

---

[4] Revised Uniform Reciprocal Enforcement of Support Act (RURESA), 23 Pa. Cons. Stat. §§ 4501-4540 (repealed).

the principles of comity, a foreign nation judgment cannot be enforced in the Commonwealth pursuant to the Enforcement Act unless it is recognized as valid pursuant to the Recognition Act." *Id.* at 84. The plaintiff in *Louis Dreyfus* erred by filing a praecipe to transfer a foreign money judgment while citing to the Enforcement Act rather than the Recognition Act as the basis for the court's authority to enter the judgment. *Id.* at 85-86. Therefore, this Court held that the plaintiff's praecipe to enter the foreign money judgment was fatally flawed and void on its face. *Id.* at 86.

In *Olympus Corp. & Keymed (Med. & Indus. Equip.) Ltd. v. Canady*, 962 A.2d 671 (Pa. Super. 2008), the plaintiff filed a praecipe in the Allegheny County Court of Common Pleas to enter a foreign judgment from the United Kingdom. This Court held that the use of a praecipe was sufficient to enter an order enforcing the foreign judgment. This Court stated that the Recognition Act "makes clear, a foreign judgment is enforceable in the same manner as the judgment of another state which is entitled to full faith and credit." *Id.* at 673 (citing 42 P.S. § 22003) (internal quotations removed).

Here, NALM filed a praecipe to enter a foreign money judgment that expressly invoked the Recognition Act. *See* Praecipe to Enter Foreign Money Judgment, 1/28/14, at 1. According to *Louis Dreyfus*, invocation of the Recognition Act is required for the foreign nation judgment to be enforced pursuant to the Enforcement Act. The text of the Recognition Act is clear that the foreign judgment is enforceable in the same manner as the

judgment of another state, which is controlled by the Enforcement Act. The Enforcement Act allows the enforcement of a foreign judgment if a copy of that judgment is filed with the clerk of the court of common pleas of the relevant county, which NALM did.

As in **Morrissey**, the relevant statute here, the Recognition Act, was implemented to streamline procedures for domesticating foreign nation judgments, and established registration as an alternative to the commencement of a civil action. **Morrissey**, **supra**. NALM, like the plaintiff in **Olympus**, filed a praecipe invoking the Recognition Act to record a foreign judgment. Accordingly, NALM's praecipe was procedurally sufficient for the trial court to recognize the foreign judgment.

McCann next argues that even if NALM used proper procedures to seek recognition of its default judgment, the Charging Order and the Monitor Order should both be reversed because NALM failed to demonstrate that the Irish court that entered the default judgment had personal jurisdiction over McCann. McCann claims that the lack of personal jurisdiction by the Irish court means that the foreign judgment is not conclusive and should not be enforced. Because there were issues with serving McCann his summary summons, McCann claims that there was not a full and fair trial abroad and that he was denied due process.

As noted in section 22003 of the Recognition Act, there are exceptions to the rule that foreign judgments are entitled to the same full faith and

credit as those of another state. The relevant exceptions are provided as follows:

### § 22004. Grounds for nonrecognition

A foreign judgment need not be recognized if:

(1) the defendant in the proceedings in the foreign court did not receive notice of the proceedings in sufficient time to enable him to defend[.]

42 P.S. § 22004.

### § 22005. Nonconclusive judgments

A foreign judgment is not conclusive if:

* * *

(2) the foreign court did not have personal jurisdiction over the defendant[.]

42 P.S. § 22005.

Section 22006 of the Recognition Act lists factors that satisfy the requirements for personal jurisdiction and are, in relevant part, as follows:

### § 22006. Personal jurisdiction

The foreign judgment shall not be refused recognition for lack of personal jurisdiction if:

(1) the defendant was served personally in the foreign state;

(2) the defendant voluntarily appeared in the proceedings other than for the purpose of protecting property seized or threatened with seizure in the proceedings or of contesting the jurisdiction of the court over him.

42 P.S. § 22006.

We will first examine the notice served upon McCann. Due process requires notice "reasonably calculated, under all the circumstances, to

apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950). In *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010), the defendant received actual notice of the filing and the United States Supreme Court held that this more than satisfied the defendant's due process rights. The Court further held that the failure to serve a summons and complaint did not entitle the defendant to relief as he received actual notice.

Here, McCann received actual notice of the summons; this was evidenced by his appearances and motions filed in the Irish court such as the affidavit accompanying his motion to set aside the substituted service order. Affidavit of John McCann, 9/12/13, at 1. This is also supported by his supplemental affidavit, which stated, in relevant part:

> I say that I take no issue with [NALM's] claim that service was effected on me and as previously stated to this Honorable Court, I withdrew any challenge to service at the earliest opportunity having taken legal advice.

Supplemental Affidavit of John McCann, 12/23/13, at 1-2. In addition, the substituted service upon a company McCann had previously done business with, Esther McGahon McGuiness & Co., was reasonably calculated, after repeated failures to serve him personally in Northern Ireland, to apprise him of the pendency of the action. *Mullane*, *supra*.

Section 22006 of the Recognition Act governs the manner in which the personal jurisdiction requirement may be satisfied. As demonstrated by

certain pleadings he filed with the Irish court, McCann voluntarily appeared in the proceedings not only to contest jurisdiction, but also to move to set aside the judgment. Notice of Motion by McCann, 12/9/13, at 1. This appearance, along with the actual service upon McCann, satisfies the personal jurisdiction requirement of the Recognition Act under section 22006. Accordingly, the Irish judgment is final, conclusive, and enforceable under the Recognition Act and the Enforcement Act, and McCann's claim that the Irish court did not have personal jurisdiction over him fails.

McCann next argues that NALM has used the incorrect procedure to secure the Charging Order and the Monitor Order. McCann claims that NALM should have proceeded by filing and serving appropriate writs of execution rather than filing motions seeking mandatory relief. Because the wrong procedures were utilized, McCann alleges that the four McCann Entities that are sought to be charged are not parties to this proceeding and are being forced to pay a third party. McCann also argues that even if the Charging Order were appropriate, NALM is not entitled to any information from the McCann Entities sought to be monitored, as three of the four entities are limited liability companies. Additionally, McCann alleges that the Monitor Order should be reversed because McCann is not a resident or domiciliary of this Commonwealth.

Of the four McCann Entities involved, one is a limited partnership and three are limited liability companies. Regarding the limited partnership

entity, the Pennsylvania Limited Partnership Act, 15 Pa.C.S. § 8501, governs

and provides, in respect to the judgment creditors of a partner, as follows:

> On application to a court of competent jurisdiction by any judgment creditor of a partner, the court may charge the partnership interest of the partner with payment of the unsatisfied amount of the judgment with interest. To the extent so charged, the judgment creditor has only the rights of an assignee of the partnership interest.

15 Pa.C.S. § 8563.

For the three limited liability companies, the Pennsylvania statute on

the limited transferability of membership interest provides, in relevant part,

as follows:

> The interest of a member in a limited liability company constitutes the personal estate of the member and may be transferred or assigned as provided in writing in the operating agreement. Unless otherwise provided in writing in the operating agreement, if all of the other members of the company other than the member proposing to dispose of his interest do not approve of the proposed transfer or assignment by unanimous vote or written consent, which approval may be unreasonably withheld by any of the other members, the transferee of the interest of the member shall have no right to participate in the management of the business and affairs of the company or to become a member. *The transferee shall only be entitled to receive the distributions and the return of contributions to which that member would otherwise be entitled.*

15 Pa.C.S. § 8924 (emphasis added).

In ***Zokaites v. Pittsburgh Ir. Pubs, LLC***, 962 A.2d 1220 (Pa. Super.

2008), this Court held that a judgment creditor is "entitled to the debtor-

member's economic rights to satisfy the member's indebtedness by seeking

an order of court for the distributions and the return of contributions which

[the judgment debtor] is entitled to from his limited liability companies." **Id.** at 1226.

Here, the Charging Order only attaches to McCann's individual partnership and membership economic interests, and does not include any right to participate in the management of the business or to become a member. Accordingly, NALM, as a judgment creditor, followed the proper procedure in seeking a charging order for the partnership interest and membership economic interests in the McCann Entities.

McCann also asserts that the McCann Entities are wrongfully being coerced by the court to pay NALM because they were not properly served with process and should be parties to this proceeding.

The Pennsylvania Limited Partnership Act provides, with respect to the limited partnership entity, that the judgment creditor only possesses the rights of an assignee of the partnership interest for the payment of the unsatisfied amount of the judgment. 15 Pa.C.S. § 8563. Regarding the three limited liability companies, the Pennsylvania Limited Liability Company Law of 1994 provides, in relevant part, that the "interest of a member in a limited liability company constitutes the personal estate of the member and may be transferred or assigned as provided in writing in the operating agreement." 15 Pa.C.S. § 8924.

Here, the interests sought in the charging order only impact the economic interests of the member or partner, McCann. The McCann Entities themselves are not directly affected by this order. The entities are merely

making the same payments, but to a different party, NALM, rather than McCann. Accordingly, the McCann entities were not necessary and indispensable parties to this order and were not required to be parties to the proceeding.

McCann's next two claims are arguments against the Monitor Order. However, NALM claims that the Monitor Order is not appealable and should be quashed. McCann argues that the Monitor Order is appealable for three reasons: it provides for injunctive relief;[5] it will affect the possession or control of property; [6] and it will finally and incurably dispose of valuable property rights.[7]

McCann claims that the Monitor Order is appealable as an injunction under Pa.R.A.P. 311(a)(4) because he is required to cooperate with and provide information to the appointed financial monitor. Specifically, McCann must provide the financial monitor with access to persons, places, and information as requested.

Appellate courts have generally been reluctant to extend the right to appeal an injunction under Rule 311(a)(4) to other types of orders that are similar to injunctions, but which do not involve formal injunctive relief. ***See***

---

[5] Pa.R.A.P. 311(a)(4).

[6] Pa.R.A.P. 311(a)(2).

[7] Pa.R.A.P. 341.

Ronald Darlington, **Pa. Appellate Practice**, § 311:47 (2014-15). In fact, this Court has denied many orders that impose significant obligations, but were held not to be appealable as injunctive relief. **See Beckman v. Abramovitz**, 496 A.2d 53 (Pa. Super. 1985) (orders requiring corporate assets to be frozen pending settlement agreement); **Valley Coal Co. v. Int'l Union, United Mine Workers**, 586 A.2d 436 (Pa. Super. 1991) (orders directing parties to mediate their differences under supervision).

Here, the Monitor Order is even more limited than the orders in **Beckman** and **Valley Coal** and only requires McCann to cooperate with a financial monitor. The Monitor Order is not an order for formal injunctive relief and this Court will not extend the right of appeal under Rule 311(a)(4).

McCann also argues that the Monitor Order will result in the loss of valuable property rights and is therefore akin to an order affecting the possession or control of property under Pa.R.A.P. 311(a)(2). McCann does not further this argument in his brief and did not preserve it at trial. We can infer, however, that McCann claims that the Monitor Order requires the disclosure of confidential information and trade secrets.

As a general rule, issues that are not raised in the lower court are waived and cannot be raised for the first time on appeal. Pa. R.A.P. 302(a). Even if an appellant had preserved his right to appeal, a claim would be "waived by his failure to provide proper argument in the brief that he filed with this Court." **Kraus v. Taylor**, 710 A.2d 1142, 1146 n.3 (Pa. Super. 1998).

Here, McCann did not preserve his "trade secret" argument and did not provide a proper argument in his brief on this subject. Accordingly, this argument is waived for purposes of appeal.

Lastly, McCann argues that the Monitor Order is appealable as of right because it will finally and incurably dispose of valuable property rights under Pa R.A.P. 341. This argument is waived as well. McCann did not raise this issue in his response to NALM's petition for appointment of a financial monitor, or at the hearing on that motion. Further, McCann does not provide proper argument on this issue. **Kraus**, **supra**. Moreover, the Monitor Order does not finally dispose of any valuable property rights; it merely requires disclosure of information. Therefore, this argument is waived for purposes of appeal. Accordingly, McCann's appeal from the Monitor Order is quashed.

The order of October 21, 2014 imposing a Charging Order is hereby affirmed; the appeal from the October 30, 2014 Monitor Order is hereby quashed.

Affirmed in part; quashed in part.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/3/2015

- 16 -