

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 02-11-00334-CV**

| | | |
|---|---|---|
| New Hampshire Insurance Company | § | From the 17th District Court |
| | § | of Tarrant County (17-250215-10) |
| v. | | |
| | § | January 10, 2013 |
| Magellan Reinsurance Co. Ltd. | § | Opinion by Justice Dauphinot |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was no error in the trial court's final order on New Hampshire Insurance Company's motion for nonrecognition of foreign judgment. It is ordered that the order of the trial court is affirmed.

It is further ordered that Appellant New Hampshire Insurance Company shall pay all of the costs of this appeal, for which let execution issue.

SECOND DISTRICT COURT OF APPEALS

By_____
Justice Lee Ann Dauphinot



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-11-00334-CV

---

NEW HAMPSHIRE INSURANCE                                      APPELLANT
COMPANY

V.

MAGELLAN REINSURANCE CO.                                     APPELLEE
LTD.

----------

FROM THE 17TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

New Hampshire Insurance Company (NHIC) appeals from the trial court's

order denying its motion for nonrecognition of foreign country judgments against it,

which was filed for recognition by Appellee Magellan Reinsurance Co. Ltd.  NHIC

challenges the order in three issues, each asserting Magellan's noncompliance with

the requirements for recognition of foreign country judgments under the Uniform

---

[1]*See* Tex. R. App. P. 47.4.

2

Foreign Country Money-Judgment Recognition Act (the Act).[2] This appeal requires us to consider four questions: (1) whether an assessment of costs constitutes a money judgment; (2) if so, whether that assessment constitutes a final judgment on the merits for purposes of the Act; (3) if so, whether an award of costs in a "loser-pays" system is a penalty; and (4) whether the assessments in this case were properly authenticated. Because we hold that Magellan met the statutory criteria for recognition of foreign country judgments, we affirm the trial court's order.

**Background**

*The Foreign Country Judgments*

The instruments filed for recognition resulted from a suit filed in the Turks and Caicos Islands (TCI), a British overseas territory in the United Kingdom.[3] TCI has its own constitution and court system.[4] Its judicial system includes both a Supreme Court, the court of general original jurisdiction, and a Court of Appeal, a court of

---

[2]Tex. Civ. Prac. & Rem. Code Ann. §§ 36.001–.008 (West 2008).

[3]*See* British Nationality Act, 1981, c. 61, §50(1), sch. 6, *available at* http://www.legislation.gov.uk/ukpga/1981/61/contents; British Overseas Territories Act, 2002, c. 8, § 1, *available at* http://www.legislation.gov.uk/ukpga/2002/8/contents.

[4]Foreign & Commonwealth Office, The Overseas Territories: Security, Success and Sustainability, 2012, Cm. 8374, at 14 (U.K.), *available at* http://www.official-documents.gov.uk/document/cm83/8374/8374.asp; Her Majesty's Governor's Office, The UK in the Turks and Caicos Islands, http://turksandcaicosislands.fco.gov.uk/en/about-us/uk-in-turks-and-caicos/overseas-territories.

3

general appellate jurisdiction.[5]  The final court of appeal for both civil and criminal cases from TCI is the Judicial Committee of the Privy Council (the Privy Council).[6]

NHIC filed a winding-up petition against Magellan in TCI.  In 2006, the TCI Supreme Court ruled in favor of NHIC, but on appeal, the Court of Appeal determined that NHIC was not a creditor of Magellan and therefore did not have standing to assert its winding-up petition.  NHIC appealed to the Privy Council.  In a

---

[5]The Turks and Caicos Is. Const., Order 2011, SI 1681, sch. 2, § 21, *available at* http://www.legislation.gov.uk/uksi/2011/1681/contents/made; *see also* Stephen Kruger, Supreme Courts As Courts of General Original Jurisdiction, 39 Int'l J. Legal Info. 51, 54, 59 (2011).

[6]Jud. Comm. Practice Direction (PD) 1.1, *available at* http://www.jcpc.gov.uk/procedures/practice-directions.html.  Historical information about the Privy Council is given in *Jarvis v. Sewall*, 40 Barb. 449, 455–56 (N.Y. Gen. Term. 1863) (describing the Privy Council and stating,

> [T]he court of [p]rivy [c]ouncil . . . is composed of the high officers of state . . . who together compose what is called the "judicial committee of the [p]rivy [c]ouncil."  It is a court of appeals from judgments rendered in the colonial courts. . . .  It has power to award costs, and determine who shall pay them, and to direct the manner in which its judgments in all respects shall be enforced. . . .  The only officer having any functions analogous to that of the clerk of an ordinary court, is an officer called the registrar, who has the powers and exercises the duties of both an examiner and master in chancery, and such others as his majesty, under his sign manual, may appoint.);

*See also* John deP. Wright*, The Judicial Committee of the Privy Council*, 10 Green Bag 2d 363, 364–65 (2007) (describing the history of Canadian appeals to the Privy Council and describing that body in this way:

> The Judicial Committee of the Privy Council was (and is) not a court. Proceedings did not go to it as "appeals" in the formal sense but as petitions for justice "to the foot of the Throne". . . .  The decisions of the Committee were not "judgments," they were "advice" to the Monarch, and were handed down in the form of an Order In Council.).

4

judgment dated July 15, 2009, the Privy Council held that NHIC did not have standing to present a winding-up petition against Magellan and recommended that NHIC's appeal be dismissed with costs. On October 15, 2009, the Queen issued an order approving the judgment, with costs "to be assessed if not agreed."[7]

Approximately eight months later, on June 18, 2010, the registrar of the Privy Council issued a taxation certificate. The certificate (which gave an incorrect date for the Privy Council's judgment) stated,

> I HEREBY CERTIFY that in pursuance of the Order of . . . the Privy Council dated the 4th December 2009 the costs of the respondent in the above appeal has been assessed on the standard basis and the sum of £48,813.17 (Forty-eight thousand eight hundred and thirteen pounds and seventeen pence[)] has been allowed.

In a June 21, 2010 letter to Magellan's counsel, the costs clerk of the Privy Council[8] acknowledged receipt of the "completed bill of costs" from the registrar and attached the taxation certificate.

The next month, on July 30, 2010, the registrar in the TCI Supreme Court issued a certificate of taxation stating that

> IN PURSUANCE of the Judgement herein of the Court of Appeal delivered on 8 September, 2006 and the Judgement herein of the Privy Council delivered on 15 July, 2009 . . .

---

[7] *Jarvis*, 40 Barb. at 456 ("When an appeal comes before [the Privy Council], it is referred to the judicial committee, who hear[s] the case and make a report or recommendation upon which the sovereign makes his decision, and that becomes the judgment of the court of [p]rivy [c]ouncil.").

[8] Jud. Comm. PD 8.1 ("The Costs Clerk is an officer in the Registry of the Judicial Committee who acts under the direction and supervision of the Registrar."), *available at* http://www.jcpc.gov.uk/procedures/practice-directions.html.

5

I CERTIFY that I have taxed the costs of [Magellan] at the sum of $141,283.82 as being due and payable by [NHIC] to [Magellan].

These costs assessments from the Privy Council and the TCI court do not expressly indicate what kind of case the assessments arose out of, what the court's holding was on substantive issues, or who was the successful party.

*Filing of Notice of Foreign Judgments*

Five months later, in December 2010, Magellan filed a "Notice of Filing of Foreign Judgment" in a trial court in Tarrant County, Texas. The notice stated that NHIC was "hereby notified that on December 29, 2010, [Magellan] filed with [the trial court] . . . authenticated copies of two judgments . . . for domestication under Chapters 35 and 36 of the Texas Civil Practice & Remedies Code."[9]

The notice described the two judgments as (1) a judgment rendered on July 30, 2010, by the TCI Supreme Court in the suit between NHIC and Magellan, awarding Magellan recovery of $141,283.82, and (2) a judgment rendered on June 18, 2010, by the Privy Council, awarding Magellan £48,813.17. These dates correspond with the dates that the respective cost certificates were issued rather than the dates of the judgments determining that NHIC did not have standing. Attached to the notice were copies of the costs assessments, which Magellan asserted were the judgments it wished to have recognized.

---

[9]Tex. Civ. Prac. & Rem. Code Ann. §§ 35.001–35.008 (West 2008 & Supp. 2012), 36.001–.008.

*NHIC's Response*

On January 31, 2011, NHIC responded to Magellan's notice by filing a motion for nonrecognition. NHIC first argued that chapter 35 only applies to judgments from United States states and territories. Regarding recognition under chapter 36, NHIC argued that Magellan had filed only "two 'certificates of taxation,' rather than a judgment on the merits," and that these certificates were not entitled to recognition as foreign country judgments under the Act. It also asserted that Magellan had not obtained a judgment in its favor on the merits of a cause of action. NHIC further argued that the Act "specifically excludes from its definition of 'Foreign Country Judgment' a mere judgment for a tax, fine, and/or penalty, which is precisely what Magellan seeks to domesticate here."

*Magellan's Reply*

Magellan responded that it had provided the court with two authenticated foreign country judgments against NHIC and that the judgments were not for taxes. It did not address whether the judgments were for a penalty. Magellan also asked the court for an extension of time to provide the court with "additional documentation from the respective judicial bodies . . . that will simply affirm that the final judgments submitted to [the trial court] are not for taxes." The trial court's order on the motion allowed Magellan an additional twenty days to submit "additional argument, authorities, and supporting material."

Magellan's supplemental response attached two affidavits: one from Simon John Kemp, Magellan's attorney in the appeal to the Privy Council, and one from

Carlos W. Simons, Magellan's attorney in the suit in TCI. Both of these affidavits had exhibits attached, including letters from the registrars at the TCI Supreme Court and the Privy Council and copies of procedural rules from those courts.

*The Trial Court's Orders*

On July 22, 2011, the trial court entered an order denying NHIC's motion for nonrecognition. On August 9, 2011, the trial court signed a final order denying NHIC's motion for nonrecognition, and this appeal followed.

## Uniform Foreign Country Money-Judgment Recognition Act

The Act provides a mechanism by which a judgment creditor under a money judgment from a foreign country may have that judgment recognized in Texas. When a foreign country judgment meets the criteria set out in the Act and is granted recognition under the chapter, the judgment "is enforceable in the same manner as a judgment of a sister state that is entitled to full faith and credit."[10] The Act defines the term "foreign country judgment" as "a judgment of a foreign country granting or denying a sum of money other than a judgment for: (A) taxes, a fine, or other penalty; or (B) support in a matrimonial or family matter."[11] A party seeking recognition of a foreign judgment must file with the court clerk "[a] copy of a foreign country judgment authenticated in accordance with an act of congress, a statute of

---

[10] *Id.* § 36.004.

[11] *Id.* § 36.001.

8

this state, or a treaty or other international convention to which the United States is a party."[12]

### Magellan's Jurisdictional Challenge

Before we consider NHIC's first issue, we address Magellan's assertion that this court lacks subject matter jurisdiction over the appeal because NHIC did not timely file its notice of appeal. NHIC filed its notice of appeal on August 18, 2011. Magellan contends that when a foreign country judgment is filed, it acts as both a petition and a final judgment, and so the time period for filling an appeal began when Magellan first filed its notice of judgment. It contends that a motion for nonrecognition acts as a motion for new trial, and so NHIC had until March 31, 2011 at the latest to file its appeal, making NHIC's appeal untimely.

Magellan's argument derives from the language in section 36.004 stating that a foreign country money judgment "is enforceable in the same manner as a judgment of a sister state that is entitled to full faith and credit." Magellan also relies on case law holding that when a judgment creditor under a sister state judgment files the judgment under chapter 35, the judgment "comprises both a plaintiff's original petition and a final judgment" and, when the judgment complies with chapter 35, it becomes enforceable as a Texas judgment on the date it is filed.[13] Magellan

---

[12]*Id.* § 36.0041.

[13]*Walnut Equip. Leasing Co., Inc. v. Wu*, 920 S.W.2d 285, 286 (Tex. 1996).

argues that because of the language of section 36.004, this case law applies to filings for recognition under the Act.

Under the Full Faith and Credit Clause of the United States Constitution, judicial proceedings from one state must be given full faith and credit in every other state.[14] This clause applies only to sister-state judgments. There is no analogous constitutional provision requiring United States courts to give full faith and credit to judgments of foreign countries. But does section 36.004 nevertheless require us to hold that NHIC missed its notice of appeal deadline? We do not believe it does.

The sentence upon which Magellan relies should not be read out of context. The rest of that section provides that

> [e]xcept as provided by Section 36.005, a foreign country judgment that is filed with notice given as provided by this chapter, that meets the requirements of Section 36.002, and that is not refused recognition under Section 36.0044 is conclusive between the parties to the extent that it grants or denies recovery of a sum of money. The judgment is enforceable in the same manner as a judgment of a sister state that is entitled to full faith and credit.[15]

This section expressly sets out when a judgment becomes conclusive between the parties:

- when it is a foreign country judgment, defined by statute as one "granting or denying a sum of money" that is not "for . . . taxes, a fine, or other penalty; or . . . support in a matrimonial or family matter";[16]

---

[14]U.S. Const. art. IV, § 1.

[15]Tex. Civ. Prac. & Rem. Code Ann. § 36.004.

[16]*Id.* § 36.001(2).

- when it meets the requirements of section 36.002, meaning it is a judgment on the merits of a cause of action and is final and conclusive in the country in which it was rendered;[17] and

- when it is not refused recognition.[18]

On its face, a judgment must meet all of these prerequisites before it becomes conclusive and therefore "enforceable in the same manner as a judgment of a sister state that is entitled to full faith and credit."[19] On its face, the Act does not authorize the enforcement of foreign country judgments unless these statutory requirements have been met. Thus, because NHIC filed a motion challenging the recognition, the judgment did not become conclusive between the parties and enforceable until the trial court granted recognition.[20]

---

[17] *Id.* § 36.002.

[18] Id. § 36.004.

[19] *See Presley v. N.V. Masureel Veredeling*, 370 S.W.3d 425, 431 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (stating that a foreign country judgment is enforceable in the same manners as a sister-state judgment under the Act when it is filed in accord with the Act, notice of the filing is given as provided by the Act, and the judgment is not otherwise "refused recognition"); *The Courage Co., L.L.C. v. The Chemshare Corp.*, 93 S.W.3d 323, 330 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (stating that a foreign country judgment becomes conclusive when (1) recognition is not contested or (2) a contest is overruled).

[20] *See Hernandez v. Seventh Day Adventist Corp.*, 54 S.W.3d 335, 336–37 (Tex. App.—San Antonio 2001, no pet.); *see also Jack H. Brown & Co. v. Nw. Sign Co.*, 665 S.W.2d 219, 221–22 (Tex. App.—Dallas 1984, no writ) (holding that although the statute for enforcement of sister state judgments provides that such judgments have the same effect as a judgment of the court in which it is filed, it has that effect *only* when the statute's requirements have been met, and "[a] judgment debtor cannot be expected to respond and take such measures as may be available to him to avoid enforcement of a foreign judgment unless the statutory requirements have been met").

In a sur-reply letter brief, Magellan points to *Don Docksteader Motors* to support its position.[21]  It notes that in that case, the Supreme Court said that because the Act was silent about specific procedures applicable to foreign country judgment proceedings, the enforcement procedures in chapter 35 should apply, and therefore the appellate deadline of chapter 35 should apply.  *Don Docksteader Motors* does not control in this case.  As stated in that opinion, at the time of the litigation in that case, chapter 36 did not provide a procedure for a party to assert nonrecognition of a foreign country judgment.[22]  The Supreme Court held that because the chapter had no such procedure, it would look to chapter 35 for applicable procedures for enforcement of a foreign country judgment.

Now, of course, chapter 36 does have a procedure for asserting nonrecognition.[23]  And for purposes of our case, chapter 36 on its face provides that a foreign country judgment becomes enforceable like a sister-state judgment when the judgment meets the requirements of the statute and the trial court has not refused its recognition.[24]  So in this case, the foreign country judgments became conclusive and enforceable when the trial court overruled the motion for

---

[21]*Don Docksteader Motors, Ltd. v. Patal Enters., Ltd.*, 794 S.W.2d 760 (Tex. 1990).

[22]*Id.* at 760.

[23]*See* Tex. Civ. Prac. & Rem. Code § 36.0041–.044.

[24]*Id.* § 36.004.

12

nonrecognition.[25] The notice of appeal was filed two days after the trial court's order overruling the motion. The appeal was therefore timely.

We will therefore consider NHIC's issues. All of NHIC's issues ask this court to review the trial court's construction of statutory provisions and its determination of the applicability of those provisions. We therefore review the trial court's determination under a de novo standard of review.[26]

**Whether The Costs Assessments Are Judgments On The Merits**

NHIC makes two primary arguments under its first issue: (1) the trial court erred by recognizing the costs assessments because they are not judgments on the merits of a cause of action asserted by Magellan against NHIC, and (2) the trial court erred by granting recognition of the costs assessments filed by Magellan because the assessments were not the actual judgments, were issued by registrars, and did not dispose of any issues or claims. We address these arguments in that order.

1. *The Act allows for recognition of a judgment in favor of a defendant on a plaintiff's cause of action.*

Regarding NHIC's first argument, we disagree that under the Act, a defendant may only enforce a judgment under the Act on the defendant's own cause of action.

---

[25] *See The Courage Co., L.L.C.*, 93 S.W.3d at 330 (stating that a foreign country judgment becomes conclusive when (1) recognition is not contested or (2) a contest is overruled).

[26] *See MCI Sales & Serv., Inc. v. Hinton*, 329 S.W.3d 475, 500 (Tex. 2010), *cert. denied*, 131 S. Ct. 2903 (U.S. 2011).

The Act includes within its application a judgment "in favor of the defendant on the merits of the cause of action."[27] NHIC argues that Magellan cannot meet this requirement because Magellan did not have a cause of action pending against NHIC. A defendant on a cause of action is, by definition, defending against the *other party's* cause of action, not its own. A defendant obtains a favorable judgment if it obtains a judgment in its favor on the plaintiff's cause of action, and the language NHIC relies on simply reflects that fact. Nothing in the Act gives even a hint that it applies to a judgment for a defendant only when the judgment grants the defendant affirmative relief on a cross-claim. The "in favor of the defendant on the merits of the cause of action" language is therefore clearly not referring to the defendant's own cause of action.

NHIC does not argue that a judgment dismissing a plaintiff's claims on standing grounds is not a dismissal on the merits of the plaintiff's claim; it argues only that Magellan did not obtain a judgment on its own cause of action.[28] We therefore do not consider the question.[29] We overrule this part of NHIC's first issue.

---

[27]Tex. Civ. Prac. & Rem. Code Ann. § 36.002(a)(2).

[28]*See* Restatement (Second) of Conflict of Laws § 110 cmt. a (1971) (stating that a judgment is not "on the merits" if it does not involve the substance of the plaintiff's cause of action, and thus a judgment for a defendant is not on the merits if it is based on, for example, lack of jurisdiction or the plaintiff's capacity to sue).

[29]*Pat Baker Co., Inc. v. Wilson*, 971 S.W.2d 447, 450 (Tex. 1998) (stating that an appellate court cannot reverse a trial court's judgment on unassigned error).

14

*2. The instruments filed by Magellan are foreign country judgments for the purposes of the Act.*

NHIC's second argument under its first issue is that the costs assessments filed by Magellan are not judgments. NHIC is correct that the instruments filed for recognition by Magellan were assessments of costs determined by a registrar from the TCI Supreme Court and by a "costs judge" in the Privy Council rather than by the panel of justices who determined the substantive issues in NHIC's appeal.[30] That does not, however, mean that these costs assessments may not be enforced as judgments.[31]

The rules relating to costs in the relevant courts are instructive as to how we should view these costs assessments. The Privy Council's procedure rules include a section on the assessment of costs.[32] Costs are assessed by the registrar or by a

---

[30] *See, e.g.*, *Vickery v. Comm'n for Lawyer Discipline*, 5 S.W.3d 241, 251 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (referring to a judgment as "the final action taken by a court of competent jurisdiction in disposing of matters properly before it"); *see also Reaugh v. McCollum Exploration Co.*, 140 Tex. 322, 325, 167 S.W.2d 727, 728 (1943) (holding that a determination of which party should pay costs is part of the judgment but that "[t]he taxing of costs is not an adjudication by the court as to the correctness of the items taxed" and is "but the ministerial act of the clerk").

[31] *See, e.g.*, *Doss v. Chambers*, 188 S.W. 296, 296 (Tex. Civ. App.—Austin 1916, no writ) ("The general rule in civil cases is that, when an appellant obtains a judgment in the appellate court deciding the case on its merits in his favor, he also obtains a judgment against his adversary for all the costs.").

[32] *See, e.g.*, Jud. Comm. (App. Jurisdiction) R. (JCR), Order 2009, SI 224, sch., rr 43–52, *available at* http://www.legislation.gov.uk/uksi/2009/224/contents/made.

15

costs judge.[33]  The rules provide that the amount of costs will be inserted into the court's final order.[34]  If, however, that order is drawn up before the costs assessment has been completed, then the amount of costs assessed will be certified by the registrar.[35]  Magellan submitted evidence in the trial court showing that TCI has a similar procedural rule.[36]  And we note that the U.K. Supreme Court, the final court of appeal for civil cases in the U.K., also provides in its rules that costs may be assessed after judgment, and this assessment may be done by costs officers.[37]  Thus, under the rules of procedure for the respective courts (and other courts in the

---

[33] *See, e.g.*, *id.* at r 46; Sup. Ct. PD 13 1.1 (providing that costs assessments in that court are conducted by costs officers, one of which is the senior costs judge and one of which may be the court's registrar), *available at* http://www.supremecourt.gov.uk/procedures/practice-directions.html; *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 n.18, 95 S. Ct. 1612, 1616 (1975) (observing that "[i]t is now customary in England, after litigation of substantive claims had terminated, to conduct separate hearings before special 'taxing Masters' in order to determine the appropriateness and the size of an award of counsel fees").

[34] JCR r 50.

[35] *Id.*

[36] With respect to other parts of the U.K., Northern Ireland and Scotland appear to have similar rules.  *See* R. of the Ct. of Judicature (N. Ir.), 1980, SR 1980/346 (as amended), Ord. 62, r 8(6), *available at* http://www.courtsni.gov.uk/en-GB/Publications/court-rules/Pages/default.aspx; Act of Sederunt (R. of the Ct. of Sess.) 1994, SI 1443, sch. 2, r 42.1, *available at* http://www.legislation.gov.uk/uksi/1994/1443/contents/made.

[37] *See* Sup. Ct. R. 2009, SI 1603 (L. 17), r 47–49, *available at* http://www.legislation.gov.uk/uksi/2009/1603/contents/made.

U.K.), these assessments appear to be made by court order and considered as part of the judgment.

Neither Magellan nor NHIC provides us with any helpful authority on whether these costs assessments themselves constitute separate judgments and, if so, whether they are considered to be determinations on the merits of a cause of action. Neither do they provide us with authority as to whether, if the costs assessments are not independent judgments, Magellan had to file both the Privy Council opinion and the costs assessments in order to enforce its award of costs against NHIC in Texas. Magellan argues that the Privy Council opinion explains why that court's judgment is in favor of Magellan on the merits of a cause of action, but it does not address NHIC's point—that the costs assessments Magellan sought to enforce as judgments are not themselves judgments on the merits of a cause of action.

We first note that in the U.K., for purposes of recognizing judgments of other European Union member states in the U.K., the term "judgment" includes a "determination of costs or expenses by an officer of the court."[38] This rule gives some indication that in the U.K., costs assessments are enforceable as judgments.[39]

---

[38] *See* 2001 O.J. (L 12) 16.1.2001, ch. 3, art. 32, *available at* http://eur-lex.europa.eu/LexUriServ/LexUriServ.do?uri=CELEX:32001R0044:en:NOT; *see also* CPR 74.2(c)(v) (providing rules for the enforcement of foreign judgment in England and Wales and defining "judgment" to include "the determination of costs by an officer of the court"), *available at* http://www.justice.gov.uk/courts/procedure-rules/civil/rules/part74#IDAJR1HC.

[39] *See* Tex. Civ. Prac. & Rem. Code Ann. § 36.002 ("This chapter applies to a foreign country judgment . . . that is . . . final and conclusive and enforceable where rendered.").

Furthermore, our research indicates that across the United States, courts have routinely granted recognition to these kinds of later-determined costs assessments as judgments under the Act.[40] We follow these courts and hold that these costs assessments, which were made by order of the Privy Council's judgment in

---

[40] *See In re Hashim*, 213 F.3d 1169, 1170–71, 1172 (9th Cir. 2000) (stating that an English court had held the Hashims liable for costs in litigation in that court, that the taxation proceeding to determine the costs and fees was not held until years later, and that the costs award was entitled to comity); *Thomas & Agnes Carvel Found. v. Carvel*, 736 F. Supp. 2d 730, 746 (S.D.N.Y. 2010) (enforcing as judgments a U.K. court's costs assessments, determined after a hearing conducted by a cost judge); *Dresdner Bank AG v. Haque*, 161 F. Supp. 2d 259, 261 (S.D.N.Y. 2001) (holding that a German trial court's judgment and three awards of cost were entitled to recognition); *Otter Valley Foods, Inc. v. Aliki Foods, LLC*, No. CV094009931, 2010 WL 2573760, at *4 (Conn. Super. Ct. May 21, 2010) (holding that a Canadian court's award of costs was enforceable under Connecticut's Uniform Foreign Money-Judgments Recognition Act); *Java Oil Ltd. v. Sullivan*, 86 Cal. Rptr. 3d 177, 180, 182 (Cal. Ct. App. 2008) (considering whether to uphold a trial court's recognition of a judgment from Gibraltar that "indicated the costs were to be assessed by the Registrar," referring to the registrar's two costs assessments as judgments, and concluding that they were enforceable under the Uniform Foreign Money-Judgments Recognition Act); *Blacklink Transp. Consultants PTY Ltd. v. Von Summer*, 18 Misc. 3d 1113(A), 856 N.Y.S.2d 496, at *1, *6 (N.Y. Sup. Ct. Jan. 9, 2008) (observing that an Australian court assessed costs and attorney's fees in an ancillary proceeding conducted after trial and holding that this assessment was a judgment entitled to recognition and enforcement); *Genujo Lok Beteiligungs GmbH v. Zorn*, 943 A.2d 573, 578 n.6 (Me. 2008) (stating that court orders fixing costs awarded under judgments each qualified as "foreign judgments" even though they were not titled "judgments"); *Hazzledine v. Hazzledine*, No. 95-CA-35, 1996 WL 156883, at *3 (Ohio Ct. App. Apr. 5, 1996) (determining that an award of costs in a family law case in English court was not a judgment for support but was a judgment for costs and that because it was a judgment granting a sum of money, it was entitled to enforcement); *Desjardins Ducharme v. Hunnewell*, 585 N.E.2d 321, 323 (Mass. 1992) (reciting that the Canadian court awarded costs to Desjardins, that the court of appeals likewise awarded costs, that the clerk of the court of appeal fixed the costs for the appeal, and that the trial court fixed the costs for the proceedings from that court, and holding that the costs assessments were enforceable judgments).

connection with disposing of NHIC's claims, are enforceable as judgments under the Act.

This holding acknowledges the process by which costs are awarded in the U.K. This opinion should not be construed as holding that in every case, a costs assessment from a foreign country court will be enforceable as a judgment. We hold only that in this case, under these facts, the costs assessments fall within the definition of foreign country judgment for purposes of the Act. We overrule NHIC's first issue.

**Whether Magellan Properly Authenticated the Costs Assessments**

NHIC asks in its second issue whether the affidavits attached to the supplemental filing and used to authenticate the cost certificates properly authenticated the certificates. NHIC calls Magellan's supplemental filing untimely, but it does not make any argument about the untimeliness of the filing. It does make some argument about timeliness in its reply brief,[41] although unsupported by any case law.[42] There NHIC contends simply that the supplemental evidence was untimely and that NHIC did not agree to an extension to gather the type of evidence filed by Magellan. But even in its reply brief, NHIC does not assert that the trial court could not consider the supplemental filing and that it was error for the court to

---

[41] *See City of San Antonio v. Schautteet*, 706 S.W.2d 103, 104 (Tex.1986) (providing that an issue raised for the first time in a reply brief filed on appeal should not be considered by the court of appeals).

[42] *See* Tex. R. App. P. 38.1(i).

19

do so. We therefore do not consider whether the trial court erred by considering the supplemental filing. We consider only whether the documents filed by Magellan were properly authenticated.

To be recognized under the Act, a foreign country judgment must be authenticated in accordance with (1) an act of Congress; (2) a Texas statute; or (3) a treaty (or other international convention) to which the United States is a party.[43] NHIC asserts that because Magellan did not identify either an act of Congress or a treaty or international convention that authenticates the costs assessments, then the documents could only have been authenticated under Texas law. NHIC then argues that Magellan did not meet the requirements for authentication under Texas law.

*1. Magellan did not have to authenticate the costs assessments using Rule 902.*

NHIC first points out that Magellan did not authenticate the judgments in accordance with evidence rule 902.[44] Rule 902 relates to self-authentication of documents and provides the circumstances under which extrinsic evidence of the authenticity of a document is not required. A party wishing to admit a foreign country judgment may follow the procedures set out in that rule. But a party may also choose to establish the authenticity of a document under rule 901.[45] Thus, the fact that Magellan did not take advantage of the procedure in rule 902 is not

---

[43]Tex. Civ. Prac. & Rem. Code Ann. § 36.0041.

[44]Tex. R. Evid. 902.

[45]Tex. R. Evid. 901.

determinative of whether the judgments were properly authenticated because Magellan could have properly authenticated the judgments in accordance with rule 901.

Rule 901 provides that if evidence must be authenticated prior to its admission, this requirement "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."[46] The rule then provides a nonexclusive list of means by which evidence may be authenticated.[47] This list includes testimony of a witness with knowledge "that a matter is what it is claimed to be"; with respect to public records, evidence that a publicly-filed record is from the public office where items of this nature are kept; and any other method of authentication provided by statute.[48] We consider whether Magellan produced evidence sufficient to support a finding that the judgments are what Magellan claimed them to be—costs assessments from the Privy Council and the TCI Supreme Court.

*2. The affidavits did not need to contain jurats.*

NHIC argues that the evidence filed with the supplemental filing could not authenticate the costs assessments because the instruments from Kemp and Simons did not meet the requirements for affidavits. We disagree.

---

[46]Tex. R. Evid. 901(a).

[47]Tex. R. Evid. 901(b).

[48]*Id.*

Under the part of the government code relating to the construction of laws, the legislature has defined the term "affidavit" to mean "a statement in writing of a fact or facts signed by the party making it, sworn to before an officer authorized to administer oaths, and officially certified to by the officer under his seal of office."[49] NHIC cites a 2001 Waco Court of Appeals case for the proposition that an affidavit that does not contain a jurat[50] is not an affidavit.[51] NHIC argues that the instruments from Kemp and Simons do not contain jurats and, therefore, they are not affidavits.

The Supreme Court of Texas, however, has recently held that for satisfying the government code's definition of "affidavit," while the record must show that a purported affidavit was sworn to by the affiant, a jurat is not required.[52] Rather, "[w]hen a purported affidavit lacks a jurat, other evidence must show that it was sworn to before an authorized officer."[53] If the record "lacks any indication that a purported affidavit was sworn to by the affiant, however, the written statement is not an affidavit under the [g]overnment [c]ode."[54] *Mansions in the Forest* was a

---

[49]Tex. Gov't Code Ann. § 312.011 (West 2005).

[50]*See Mansions in the Forest, L.P. v. Montgomery Cnty.*, 365 S.W.3d 314, 316 (Tex. 2012) ("A jurat is a certification by an authorized officer, stating that the writing was sworn to before the officer.")

[51]*See Guinn v. Bosque Cnty.*, 58 S.W.3d 194, 198 (Tex. App.—Waco 2001, pet. denied).

[52]*Mansions in the Forest*, 365 S.W.3d at 315.

[53]*Id.* at 317.

[54]*Id.* at 315.

summary judgment case, but we see no reason why its holding should not apply to affidavits in all civil cases.[55] Accordingly, the affidavits submitted by Magellan meet the definition of an affidavit if evidence in the record shows that they were sworn to before an authorized officer.

Kemp's affidavit stated at the top that it was sworn to on March 23, 2011. In the first paragraph, Kemp stated that he "do make oath and say as follows." The end of the document contains Kemp's signature as well as a signature of a witness. The document has a notation stating that it was "Sworn at 25 Fenchurch Avenue this 23rd day of March 2011" before the witness and contains this statement by the witness, who is named and identified as a solicitor: "I certify that I am lawfully authorised by the laws of the United Kingdom to administer Oaths in the United Kingdom." This evidence is sufficient to show that Kemp's affidavit was sworn to before an authorized officer.

Simons's affidavit also indicates that it was sworn to before an authorized officer. The end of the document contains Simons's signature followed by text stating that the affidavit was "SWORN at Providenciales, Turks and Caicos Islands This 24th day of March, 2011" before a named person identified as a "Commissioner for Oaths." The affidavit sufficiently indicates that it was sworn to before an authorized officer.

---

[55] *See id.* at 318 (disapproving opinions of courts of appeals to the extent that they have held that (1) a written statement is not an affidavit solely because it lacks a jurat or (2) the absence of a jurat is a defect of substance that may be raised for the first time on appeal).

We further note that NHIC did not challenge in the trial court the sufficiency of evidence indicating that the affidavits had been properly sworn to.[56] It argued only that the affidavits did not contain jurats, not that Magellan failed to provide evidence to otherwise show that the affidavits were sworn to before an authorized officer. Thus, any complaint about the lack of supporting evidence was not preserved.[57]

### 3. The affidavits and exhibits authenticated the costs assessments.

We now consider whether the costs assessments, the affidavits, and the attached exhibits properly authenticated the costs assessments under rule 901. With its original filing, Magellan included a copy of the certificate of taxation from the registrar at the TCI Supreme Court. The document is signed by the registrar and bears a stamp that reads, "FILED IN THE SUPREME COURT TURKS & CAICOS ISLANDS," with the date and time. Magellan also filed a copy of a letter from the register of the Privy Council, signed by her, stating, "I HEREBY CERTIFY that . . . the costs of the respondent in the above appeal has been assessed," and providing the amount of the costs. Magellan also included a note from the costs clerk at the Privy Council, stating that she had attached the taxation certificate to her letter.

With its supplemental filing, Magellan included Kemp's affidavit in which he stated that after the Privy Council's judgment dismissing the appeal and awarding

---

[56] *See id.* at 317 ("When a purported affidavit lacks a jurat and a litigant fails to provide extrinsic evidence to show that it was sworn to before an authorized officer, the opposing party must object to this error, thereby giving the litigant a chance to correct the error.").

[57] *See id.*

24

costs to Magellan was approved, a costs judge held a hearing to assess costs, and a costs award was made. Kemp attached as an exhibit to his affidavit a letter from the registrar of the Privy Council. Kemp stated in his affidavit that he obtained the letter from the registrar. In the letter, the registrar stated that the certificate of taxation dated June 18, 2010 "is a final award of the costs to be paid to Magellan Reinsurance Company Limited by New Hampshire Insurance Company." The registrar explained that under the Privy Council's procedural rules, if the Privy Council's order does not include the amount of costs, then "the [r]egistrar certifies the amount of costs payable by a party." She stated that costs were assessed at a hearing, that the certificate of costs was final, and that NHIC failed to challenge the decision on costs although it had fourteen days to do so after the costs assessment was made.

Kemp also attached as an exhibit procedural rules for practice before the Privy Council. These rules provide that the Privy Council "may make such orders as it considers just in respect of the costs of any appeal"; that when the Privy Council has made an order for costs, "the claim for costs must be submitted to the [r]egistrar"; and that "[t]he [r]egistrar will assess costs . . . and may do so with a costs judge as an assessor." The rules further provide that "[t]he amount of any assessed costs will be inserted in the order . . . but, if that order is drawn up before the assessment has been completed, the amount assessed will be certified by the [r]egistrar." Thus, the statements in the registrar's letter are supported by these rules, giving credence to her statements that the registrar certifies the costs when

25

the Privy Council's order does not include the costs and adding credibility to Magellan's assertions that the Privy Council costs assessment submitted by Magellan is in fact what it appears to be.

Magellan also submitted the affidavit of Carlos Simons, Magellan's council in TCI. Simons stated that the amount specified in the certificate of taxation from the registrar at the TCI Supreme Court were the litigation costs assessed by the registrar. Simons attached as an exhibit to his affidavit a letter signed by the registrar at the TCI Supreme Court explaining that the certificate of costs was a final award of costs to be paid to Magellan by NHIC. Simons also attached a copy of procedure rules for practice at the TCI Supreme Court. These rules provide that when the court has ordered a party to recover its costs, the registrar has the power to assess costs and shall issue a certificate for the costs allowed.

NHIC asserts that the affidavits do not attempt to authenticate the costs assessments and, citing evidence rule 602,[58] that Magellan's attorneys have no personal, first-hand knowledge of the costs assessments and therefore could not authenticate them. But Magellan's attorneys did not offer their affidavits to prove that the information in the costs assessments were correct. The attorney's affidavits only sought to show that the costs assessments attached to Magellan's filing were what they purported to be—the costs assessments issued by the TCI and Privy Council registrars—and that the costs assessments were not for "taxes."

---

[58] *See* Tex. R. Evid. 602.

NHIC argues that Kemp's affidavit does not show personal knowledge because he stated that "[t]he facts and matters deposed herein are true to the best of my knowledge, information[,] and belief unless stated otherwise." But from the context of Kemp's affidavit, it is clear that when he stated that he obtained from the Privy Council registrar the letter attached to his affidavit as exhibit 5, he spoke from personal knowledge of from whom he received the letter. Putting Kemp's affidavit together with the letter that he swore he received from the registrar, along with the costs assessment itself, which contains a signature of the registrar that appears to match the signature of the registrar on her letter, the evidence before the trial court was sufficient to indicate that the Privy Council costs assessment is what Magellan claimed it to be.[59]

Regarding Simons's affidavit, he stated that "[t]he facts to which I depose in this Affidavit are within my own knowledge and are true and correct," and he supplied facts in his affidavit giving the basis of his knowledge. Simons stated that he represented Magellan in the litigation in the TCI Supreme Court from which the costs order and costs assessment arose. Regarding the costs assessment, he stated, "Both parties [in litigation] are entitled to be represented at the [costs] assessment hearing[,] and I can confirm that NHIC's TCI counsel . . . was present and represented NHIC at the assessment hearing from which the TCI Certificate of

---

[59] *See* Tex. R. Evid. 901(a).

Taxation arises." He then referenced a letter that he had attached to his affidavit from the TCI Supreme Court's registrar.

The letter attached to Simons's affidavit is a letter bearing the letterhead of the TCI Supreme Court. The letter, from the TCI court's registrar, stated that the certificate of costs is a final award of costs to be paid by NHIC to Magellan. The registrar also stated that according to TCI civil procedure rules, NHIC had fourteen days to challenge the award of costs and did not do so. The evidence from Simons, together with the costs assessment itself, is sufficient to indicate that the TCI costs assessment is what Magellan claimed it to be.[60]

*4. The language of the TCI costs assessments does not raise questions about its authenticity.*

Finally under this issue, NHIC argues that from the face of the costs assessments, it appears that the total costs assessed by TCI combined the costs at both the TCI appeals and the Privy Council. It contends that "[b]ecause Magellan failed to properly authenticate the documents it submitted, the exact process the TCI courts underwent to assess the costs is unknown, and there is a high likelihood that domestication of Magellan's submission would result in a double recovery."

NHIC appears to base its argument on a statement in the TCI costs assessment that it was made "IN PURSUANCE of the Judgment herein of the Court of Appeal delivered on 8 September, 2006 and the Judgment herein of the Privy Council delivered on 15 July, 2009 and the provisions of Order 62 of the Civil Rules

---

[60] *See id.*

2000." We disagree with NHIC that this language raises a question as to authenticity of the costs assessments. The language appears only to reflect the Queen's order that "those charged with administering the Government of the [TCI] and all others whom it may concern are to ensure that" the Privy Council report, including its award of costs, "is punctually observed and obeyed." Nothing in the language of the TCI costs assessment appears to suggest that the costs assessment included the costs of the Privy Council.

And importantly, whether the amount of the TCI costs assessment was incorrect is a different question from whether the document filed by Magellan was in fact the TCI court costs assessment. If NHIC believed that the TCI costs assessment was incorrect, NHIC had a process to challenge the assessment in the court that issued it, but it apparently declined to do so. We overrule NHIC's second issue.

**Whether the Costs Assessments were Judgments for Penalties**

NHIC's third and final issue asks whether the costs assessments were merely judgments for penalties and therefore unenforceable under Texas law. The definition of "foreign country judgment" in the Act expressly excludes a judgment for a penalty.[61] Accordingly, if the costs awarded to Magellan were assessed as a penalty, then the assessments were not the type of judgments that can be enforced under the Act.

---

[61]Tex. Civ. Prac. & Rem. Code Ann. § 36.001(2).

29

As NHIC points out, the U.K. applies the "loser pays" English rule under which the prevailing party in a suit may recover its attorney's fees.[62] NHIC contends that "it is apparent that the sole purpose of the appellate court costs assessments is to punish NHIC for adverse appellate decisions."[63] This conclusory statement is not supported by any citation to authority. The Supreme Court of Texas has said that "statutory provisions for the recovery of attorney's fees are in derogation of the common law, are penal in nature[,] and must be strictly construed."[64] That is the rule in this state, where the common law evolved under the American rule and therefore an award of attorney's fees is in derogation of the common law. But NHIC has provided us with no authority on which we may base a conclusion that the English Rule—which is a part of and not in derogation of the common law of the U.K.—is meant to be penal in nature, and we have found none.[65] To the contrary,

---

[62] *See 1/2 Price Checks Cashed v. United Auto. Ins. Co.*, 344 S.W.3d 378, 382 & n.8 (Tex. 2011) (contrasting the "American Rule for the award of attorney's fees, under which attorney's fees are recoverable in a suit only if permitted by statute or by contract," with the "English Rule, in which a court may award attorney's fees to the prevailing party in a suit"); *Java Oil Ltd.*, 86 Cal. Rptr. 3d at 185 ("The English rule is that generally the loser must pay the winner's attorneys fees.").

[63] *See Smith v. Basham*, 227 S.W.2d 853, 857 (Tex. Civ. App.—Dallas 1950) (defining "penalty" as "a sum of money of which the law exacts payment by way of punishment for doing some act that is prohibited, or omitting to do some act that is required to be done"), *aff'd*, 149 Tex. 279, 233 S.W.2d 297 (1950).

[64] *New Amsterdam Cas. Co. v. Tex. Indus., Inc.*, 414 S.W.2d 914, 915 (Tex. 1967).

[65] *See* Tex. R. App. P. 38.1(i).

all of our research indicates the contrary and that the U.K.'s use of the English rule simply reflects a different public policy decision.[66]

Furthermore, other courts construing similar statutes have stated that whether a judgment is penal in nature for purposes of determining whether to recognize a foreign judgment "depends upon the question [of] whether its purpose is to punish an offense against the public justice of the state, or to afford a private remedy to a person injured by the wrongful act."[67] NHIC has provided us with nothing from which we could conclude that costs are assessed under U.K. law for any purpose

---

[66]*See, e.g.*, *Carvel*, 736 F. Supp. 2d at 749, 750 (stating that "[c]ommon-law jurisdictions have different procedural rules, some of which reflect different public policy choices" and that "[t]he so-called 'English rule' under which a loser pays the winner's attorneys' fees, and the usual 'American rule', under which each side bears its own attorneys' fees, reflect such choices" and holding that English costs judgments were not unenforceable) (citation omitted); *Erbe Elektromedizin GMBH v. Canady*, 545 F. Supp. 2d 491, 496–97 (W.D. Pa. 2008) (holding that the awarding of attorney's fees in the U.K. was not meant to punish an offense against the public justice and instead was remedial in nature, aimed at compensating the defendant for the damages incurred in being compelled to defend against the suit); *Fla. Patient's Comp. Fund v. Rowe*, 472 So. 2d 1145, 1147–48 (Fla. 1985) (noting that the English rule is not in derogation of English common law), *holding modified on other grounds by Standard Guar. Ins. Co. v. Quanstrom*, 555 So. 2d 828 (Fla. 1990).

[67]*See Chase Manhattan Bank, N.A. v. Hoffman*, 665 F. Supp. 73, 75 (D. Mass. 1987) (quoting *Huntington v. Attrill*, 146 U.S. 657, 673–74, 13 S. Ct. 224, 230 (1892), in deciding whether a foreign money judgment was enforceable under Massachusetts's version of the Uniform Foreign Money-Judgments Recognition Act); *see also Olympus Corp. v. Canady*, 962 A.2d 671, 677, 678 (Pa. Super. Ct. 2008) (holding that an award of counsel fees under the English "loser pays" rule was remedial rather than penal in nature and was therefore enforceable under Pennsylvania's Uniform Foreign Money-Judgments Recognition Act and stating that "By initiating his complaint in England, under English law and rules of court, Appellant implicitly acquiesced to an award of counsel fees to the prevailing party"); *Desjardins Ducharme*, 585 N.E.2d at 324 (applying *Hoffman* to conclude that a Quebec judgment was not a penalty).

other than as part of the remedy afforded to the successful party in litigation, and we have found no authority supporting NHIC's view of U.K. law. Accordingly, we overrule NHIC's third issue.

## Conclusion

Having overruled NHIC's three issues, we affirm the trial court's order.


LEE ANN DAUPHINOT
JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and GABRIEL, JJ.

DELIVERED:  January 10, 2013